RECEIVED
MAR 31 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

b

| | |
|---|---|
| ALVIN KEITH SANSON,<br>Appellant | CIVIL ACTION<br>NO. 1:13-CV-00495 |
| VERSUS | |
| U.S. COMMISSIONER OF SOCIAL SECURITY,<br>Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Alvin Keith Sanson ("Sanson"), who was 50 years old in January 2012, filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on January 21, 2011 and July 19, 2011, respectively, alleging a disability onset date of June 20, 2010 (Tr. pp, 114, 118) due to diabetes, blockage of an artery to his brain, a brain tumor, gout, and a rounded calcified mass in the right frontal lobe of his brain (Tr. p. 147). The Social Security Administration ("SSA") denied those claims initially (Tr. p. 112).

A de novo hearing was held before an Administrative Law Judge ("ALJ") on January 9, 2012 (Tr. p. 23). The ALJ found that, although Sanson suffers from severe impairments of brain tumor, occluded artery, and diabetes, he has the residual functional capacity to do heavy work except that he is limited to walking for no more than 30 to 60 minutes, standing no more than 30 to 60 minutes, and sitting no more than two hours (Tr. p. 16), and can do his past relevant work as a rotary driller and a tool pusher (Tr.

p. 19). The ALJ concluded that Sanson was not disabled within the meaning of the Social Security Act at any time through the date of her decision on January 24, 2012 (Tr. p. 19).

Sanson requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Sanson then filed this appeal for judicial review of the Commissioner's final decision. Sanson raises the following issues for review on appeal (Doc. 11):

> 1. The ALJ stated that she intended to rely on Dr. Tillman, who performed the agency's physical examination, but she declined to adopt the physical restrictions assessed by Dr. Craig, who reviewed the Tillman report and generated the agency's physical residual functional capacity assessment. No evidentiary choices support the ALJ's finding; the medical expert who testified at the hearing assessed no physical restrictions whatsoever. The physical residual functional capacity adopted by the ALJ is not similar to any of the medical sources in the record.
>
> 2. The ALJ declined to adopt the mental restrictions reflected in the report of Dr. Adams, who performed the agency's mental examination. The ALJ stated that she intended to rely on Dr. Adams, but she did not include a fourth grade reading level, an inability to count change, memory deficits or cognitive restrictions in either the residual functional capacity assessment she adopted or in her instructions to the vocational expert. The medical expert who testified at the hearing assessed no mental restrictions, and the ALJ failed to recognize or explain the resolution of the contrary opinions.
>
> 3. The ALJ erred in finding that the claimant can resume past work and the error is not harmless, because the vocational expert did not cite other jobs that the claimant could perform, leaving the Commissioner's burden to prove other jobs unsatisfied.

The Commissioner responded to Sanson's appeal (Doc. 12), to

which Sanson replied (Doc. 13). Sanson's appeal is now before this court for disposition.

## Eligibility for Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(I), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Summary of Pertinent Facts

Sanson was 50 years old at the time of his January 9, 2012 administrative hearing (Tr. p. 28), has a seventh grade education (Tr. p. 29), and has past relevant work as a rotary driller for a drilling company (2008-2010), a tool pusher (2006-2008), and a tractor driver (2008-2009) (Tr. p. 148).

### 1. Medical Records

On August 22, 2010, Sanson was treated for a 12 cm laceration on the back of his head caused by a fall (in a lawnmower accident) (Tr. pp. 214-216, 253).

In September 2010, an MRI of Sanson's head revealed a 2 cm mass along the later margin of the anterior cranial fossa on the right and multiple old chronic infarcts (not acute) in the cerebral hemisphere on the right side predominantly involving the right frontal lobe and in portions of the right parietal lobe (Tr. p. 222-223). The mass had imaging characteristic of a benign meningioma that was not causing any significant mass effect at that time (Tr. pp. 222-223, 244-245). Sanson was diagnosed with a benign brain tumor (Tr. p. 225). An MRA (magnetic resonance angiogram) of Sanson's head in September 2010 showed no signal within the intra cranial portion of the right internal carotid artery, apparently representing occlusion of the right internal carotid artery, probably in the neck (Tr. p. 244).

In October 2010, Sanson's glucose was 185 and his triglycerides and cholesterol levels were high (Tr. pp. 237-238). In January 2011, Sanson's blood sugar was 192, and his

triglycerides and cholesterol levels were high (Tr. p. 234); two days later his glucose was 164 (Tr. p. 235).

In February 2011, a bilateral carotid Doppler showed complete occlusion of the right internal carotid artery and no significant disease in the left internal carotid artery (Tr. p. 240).

In March 2011, Sanson's glucose was 153 and his triglycerides and cholesterol levels were high (Tr. pp. 241-242).

In May 2011, Dr. Barry F. Tillman, an internal medicine doctor, undertook a consultative evaluation of Sanson (Tr. pp. 253-255). Dr. Tillman noted Sanson's history of diabetes, hypertension, stroke, and hyperlipidemia (Tr. p. 253). Dr. Tillman found that Sanson was 6'2" tall, weighed 296 pounds, his visual acuity was 20/25 in each eye, and his blood pressure was 160/100 (Tr. p. 254). Dr. Tillman found that Sanson has a history of meningioma and a stroke but does not have any residual neurologic deficits (Tr. p. 254). Dr. Tillman also found that Sanson has a history of gout but no evidence of arthropathy except for a decreased range of motion in the right shoulder, which was not believed to be related to gout (Tr. p. 254).

In June 2011, Sanson underwent a consultative psychological evaluation with Dr. Rick Adams, a clinical psychologist (Tr. pp. 255-257). Dr. Adams noted Sanson's report that he completed seventh grade and had repeated several grades (Tr. p. 255). Dr. Adams found that Sanson's intellect is grossly intact, he has some mild problems with memory after a delay, his overall general information is good, he performs adequately on tasks related to

5

verbal abstract reasoning, and his reading is at approximately a fourth grade level (Tr. p. 256). Dr. Adams stated that Sanson appears capable of following simpler instructions, but not more complex instructions, he gets along well with others, his social impairments appear to be minimal, he seems able to get along with coworkers, supervisors, and the general public, he does not show a significant impairment with self care, and he takes care of activities of daily living and drives, but he does not manage money because he has always deferred to his wife in that responsibility (Tr. pp. 256-257). Dr. Adams stated that, although Sanson reported a history of brain tumor, blocked carotid artery, and problems with memory, the results of the current assessment were insufficient to make a diagnosis of cognitive disorder NOS; Dr. Adams stated that it is possible that Sanson has deficits that were not detectable during his exam (Tr. p. 257). Dr. Adams diagnosed adjustment disorder with mixed anxiety and depressed mood at Axis I, and stated that Sanson appears marginally capable of managing funds although he chooses not to do so (Tr. p. 257).

In July 2011, Sanson's eyesight was measured at 20/20 on the right and 20/25 on the left. Sanson was diagnosed with diabetes mellitus with retinopathy and cataracts (Tr. p. 231).

In October 2011, Sanson complained of right knee pain, was diagnosed with internal derangement in his right knee and prescribed an injection and Lortab (Tr. p. 269). An MRI showed a tear along the inferior aspect of the articular surface of the posterior horn of the medical meniscus, a cyst, modest effusion,

and mild arthritic joint space narrowing (Tr. p. 270). In November 2011, Sanson underwent a partial medical meniscectomy, chondroplasty and drilling, and plica resection to repair internal derangement of his right knee (Tr. p. 268). In December 2011 and March 2012, Sanson's knee pain continued to diminish and he was prescribed Mobic (Tr. p. 267).

## 2. 2012 Administrative Hearing

Sanson appeared at his January 9, 2012 administrative hearing with an attorney, a medical expert, and a vocational expert (Tr. p. 23).

A Dr. George Arbert Smith[1] of Lafayette, Louisiana (Ph.D. or medical specialty unknown) testified that Sanson does not meet or equal a listing in Appendix I, and does not have an impairment that prevents him from working (Tr. p. 28). Dr. Smith further testified that both the blockage in the internal carotid artery and the meningioma have either been there for years or have gradually developed, and the blockage in the right carotid artery is such that he was able to develop collateral circulation from the left side of his brain to the right, so Sanson does not have any restrictions from either the blocked artery or the meningioma (Tr. p. 28).

Sanson testified that he is 50 years old, 6'3" tall, weighs

---

[1] There is not a curriculum vitae for Dr. Smith in the administrative record, his area of expertise was not given at the hearing, his name is spelled phonetically in the administrative hearing transcript, and he is not in the American Medical Association database for AMA and non-AMA doctors. See https://apps.ama-assn.org/doctorfinder/recaptcha.jsp.

7

294 pounds, is married, his wife works as a babysitter two to three days a week, he has a driver's license, he completed the seventh grade in school, and he last worked a year ago as a tool pusher in the oil field (Tr. p. 29). Sanson further testified that he has also worked as a driller and working floors in the last thirty years, but he cannot get anyone to hire him now (Tr. pp. 29-30).

Sanson testified that he takes medication for blood pressure and diabetes, and that he is tired all of the time (Tr. p. 30). Sanson testified that he can walk for thirty minutes to an hour, stand for thirty minutes to an hour, sit for an hour and a half to two hours, and lift eighty to one hundred pounds (Tr. p. 30).

Sanson testified that he not getting any mental health treatment (Tr. p. 30).

Sanson testified that he does very little housework, but he helps with the laundry; he does not do any shopping (Tr. p. 31).

The VE testified that Sanson's past work as a floor worker in well service is heavy, semiskilled, SVP 3 and DOT 930.684-014, his past work as a rotary driller is medium, skilled, SVP 6 and DOT 930.382-026, and his past work as a tool pusher is light, skilled, SVP 8 and DOT 930.130-010 (Tr. pp. 32-33).

The ALJ posed a hypothetical involving a claimant who is 50 years old, has a seventh grade education, can perform heavy work, can walk up to thirty minutes at a time, stand thirty minutes to an hour, and can sit up to two hours at a time (Tr. p. 33). The VE testified that such a person can do his past relevant work as a rotary driller and a tool pusher (Tr. p. 33).

## ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Sanson (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Sanson has not engaged in substantial gainful activity since June 20, 2010, and that he has severe impairments of a brain tumor, an occluded artery, and

diabetes, but he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. pp. 13, 16). The ALJ then found that Sanson has the residual functional capacity to perform heavy work except that he is limited to walking for no more than thirty to sixty minutes, standing for no more than thirty to sixty minutes, and sitting for no more than two hours (Tr. p. 16) and that, as of January 24, 2012, Sanson was still able to perform his past relevant work as a rotary driller and a tool pusher (Tr. p. 19). The sequential analysis thus ended at Step 4, with a finding that Sanson was not disabled (Tr. p. 19).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the

evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

Law and Analysis

Issue 1 - Physical Residual Functional Capacity

First, Sanson contends the ALJ stated that she intended to rely on Dr. Tillman, who performed the agency's physcial examination, but declined to adopt the physical restrictions assessed by Dr. Craig, who reviewed the Tillman report and generated the agency's physical residual functional capacity assessment. Sanson argues that no evidentiary choices support the

11

ALJ's finding, and that the medical expert who testified at the hearing assessed no physical restrictions whatsoever. Sanson contends the physical residual functional capacity adopted by the ALJ is not similar to any of the medical sources in the record.

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting. Residual functional capacity is a medical assessment, based upon all of the relevant evidence, of the work a claimant can perform despite his or her limitations. 20 C.F.R. §404.1545, §416.945. Although the burden of proof in a disability case is on the claimant to show that he is unable to perform his usual line of work, once that fact is established, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy. Herron v. Bowen, 788 F. 2d 1127, 1131 (5th Cir. 1986), and cases cited therein. Also, Babineaux v. Heckler, 743 F.2d 1065, 1067 (5th Cir. 1984). The Commissioner has the burden to establish a claimant's residual functional capacity. Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

Dr. Tillman found only that Sanson has a decreased range of motion in his right shoulder (Tr. p. 254). Dr. Craig did an initial assessment for the SSA, which does not appear to be in the administrative record. However, Sanson testified that he can walk for thirty minutes to an hour, stand for thirty minutes to an hour, sit for an hour and a half to two hours, and lift eighty to one hundred pounds (Tr. p. 30). The ALJ found that Sanson has the

residual functional capacity to perform heavy work except that he is limited to walking for no more than thirty to sixty minutes, standing for no more than thirty to sixty minutes, and sitting for no more than two hours (Tr. p. 16).

Clearly, the ALJ gave Sanson the benefit of the doubt and adopted the limitations that Sanson set for himself, which are more limiting than any physical restrictions set by a medical doctor. Since the ALJ adopted the more restrictive physical limitations testified to by Sanson, even though they do not appear to be supported by the medical evidence, Sanson cannot show prejudice from the ALJ's adoption of those physical limitations. "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988). Where the resulting disability determination remains unchanged, even if some of the reasoning underlying that decision is erroneous, no substantial rights have been affected. The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time. Mays, 837 F.2d at 1364. "The procedural improprieties alleged by [a claimant] will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988). See also, DeLeon v. Barnhart, 174 Fed.Appx. 201, 203 (5th Cir. 2006).

Since Sanson cannot show prejudice arising from the ALJ's

13

adoption of more restrictive physical residual functional capacity findings than are supported by the medical evidence, this issue is meritless.

Issue 2 - Mental Residual Functional Capacity

Sanson also contends the ALJ declined to adopt the mental restrictions reflected in the report of Dr. Adams, who performed the agency's mental examination. The ALJ stated that she intended to rely on Dr. Adams, but failed to include Sanson's fourth grade reading level, an inability to count change, memory deficits and cognitive restrictions the mental residual functional capacity assessment and in the hypothetical to the vocational expert. Sanson further argues that the medical expert who testified at the hearing did not assess any mental restrictions, and the ALJ failed to recognize and resolve the contrary opinions.

First, although the specific area of expertise of the medical expert is not set forth anywhere in the administrative record, his testimony made it clear that he was not a mental health expert. The medical expert testified as to Sanson's physical capacity and limitations only, stating that Sanson does not have any restrictions caused by the blocked artery or the meningioma. Therefore, there was no "contrary opinion" from the medical expert that the ALJ needed to explain.

Also, the ALJ stated that she gave great weight to Dr. Adams' opinion and findings (Tr. p. 14), as well as to the opinion of Dr. Tom Ray, Ph.D., a non-examining consultant (Tr. p. 15). Dr. Adams stated that Sanson appears capable of following simple

instructions, but not more complex instructions, he gets along well with others, his social impairments appear to be minimal, he seems able to get along with coworkers, supervisors, and the general public, he does not show a significant impairment with self care, he takes care of activities of daily living and drives, and appears marginally capable of managing funds although he chooses not to do so (his wife manages their finances) (Tr. pp. 256-257). According to the ALJ, Dr. Ray did not find that Sanson has any severe mental impairments[2] (Tr. p. 15).

The ALJ did not find that Sanson has any mental limitations, and noted only that Sanson has a seventh grade education. Apparently Dr. Adams, like Dr. Ray, did not find any mental impairments which would preclude Sanson from working.

Sanson contends, incorrectly, that Dr. Adams stated that Sanson is "no longer able to do the complex work that he did before he had the strokes" (Tr. p. 257). However, Dr. Adams only stated that "[Sanson] does appear to have a compromise with regard to more complex instructions. These findings are consistent with his report of being less efficient in his work." (Tr. p. 257). Dr. Adams also stated that he did not have enough medical evidence to make a diagnosis of cognitive disorder NOS (Tr. p. 257). Therefore, there is no evidence that strokes caused a cognitive disorder and caused Sanson to be unable to do the more complex work he did before. There is also no evidence of when the strokes

---

[2] Dr. Ray apparently was consulted in the initial disability evaluation by the SSA; his evaluation does not appear to be in the administrative record (T.r p. 263).

occurred. Sanson could have had those strokes before he ever started working as a rotary driller or a tool pusher.

Also, Sanson apparently has the same mental abilities and impairments now that he had before his brain tumor was discovered. Sanson has not shown any loss of cognitive ability since the benign tumor was found; the medical evidence shows that neither the tumor nor the blocked artery are causing any neurological deficits.

Since the record does not show when Sanson had his strokes and whether they caused a cognitive disorder, or that his tumor caused his cognitive abilities to change, Sanson has failed to carry his burden of proving he has a mental impairment which limits his ability to work.

Finally, Sanson contends that Dr. Adams' assessment of his mental abilities does not indicate that he is able to do the job of tool pusher, which has an SVP of 8. The VE also stated that Sanson can still work as a rotary driller, which has an SVP of 6.

SVP, or Specific Vocational Preparation, refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. See Dictionary of Occupational Titles ("DOT"), App. C (Rev. 4th Ed. 1991). Unskilled work usually requires less than thirty days training, which corresponds to an SVP of 1 or 2; semi-skilled work corresponds to an SVP of 3 or 4; and skilled work requires an SVP level of 5 or higher. Social Security Ruling 00-4p, 2000 WL 1898704, at *3 (2000). See also, 20 C.F.R. § 404.1568.

Since Sanson has already acquired the skills to work as a tool pusher and a rotary driller, Sanson has not shown that he cannot still work as a tool pusher or a rotary driller. Moreover, Sanson was working as a tool pusher when he found out that he has a brain tumor and a blocked artery. Therefore, the tumor and blocked artery are not precluding Sanson from working as a tool pusher or a rotary driller now.

This issue is meritless.

Issue 3 - Other Jobs

Finally, Sanson contends that, because the ALJ erred in finding he can resume past work and the vocational expert did not cite any other jobs Sanson can perform, the Commissioner failed to satisfy his burden of proving there are other jobs which exist in significant numbers in the national or regional economies that Sanson can perform.

Since Sanson has not proven the ALJ erred in finding Sanson can do his past relevant work as a tool pusher or a floor driller, the ALJ/Commissioner did not need to show there are other jobs which Sanson can do. This issue is meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Sanson's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another

party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 31st day of March 2014.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE